THE CITY OF CHICAGO, Appellee, *vs.* FRANK J. WIL-
LOUGHBY *et al.* Appellants.

*Opinion filed February 25, 1911—Rehearing denied April 5, 1911.*

1. SPECIAL ASSESSMENTS—*authority of a city to levy new assessment.* The authority to levy a new assessment to pay for land condemned to widen a street, where the original assessment was dismissed by the court as to part of the lots and the assessment confirmed as to the remaining property, is not derived from section 48 of article 9 of the Cities and Villages act of 1872, which is substantially the same as section 60 of the present Local Improvement act, nor from section 47 of said article, which forms a part of section 59 of the present act, but from sections 53 and 46 of said article, section 46 being identical with section 57 of the present act.

2. SAME—*when right to levy new assessment to pay for land condemned is not abandoned.* Failure of a city to file, within the time required by statute, the remanding order of the Supreme Court upon the reversal of a judgment dismissing, as to certain lots, a petition for a special assessment to pay for land condemned to widen a street, is an abandonment by the city of the right to proceed to assess such lots in that particular proceeding but is not an abandonment of the right to make a new assessment against them, as in case of an assessment annulled by an order of court.

3. SAME—*when ordinance annulling assessment is unnecessary.* Where a special assessment, under section 53 of article 9 of the Cities and Villages act of 1872, to pay for land condemned to widen a street is confirmed as to part of the property and the confirmation judgments are not appealed from, but the petition is dismissed by the court as to certain lots and the judgment dismissing the petition is reversed by the Supreme Court, no ordinance annulling the assessment is necessary to enable the city to make a new assessment against such lots, as the judgment dismissing the petition is, of itself, an annulment of the assessment against such lots, and as to the remaining property the city is without power to annul the judgments of confirmation after the term.

4. SAME—*condemnation ordinance and judgments are the basis of assessment to pay for land.* Where an ordinance provides for the widening of a street by condemnation and for the levy of a special assessment to pay for the land taken, the amount to be paid by special assessment is fixed by the condemnation judgments, and no ordinance describing the improvement and no estimate of cost is necessary to authorize the levy of the assessment.

APPEAL from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding.

LOUIS T. ORR, JACOB H. HOPKINS, and ENOCH J. PRICE, for appellant.

GEORGE A. MASON, and EDGAR R. HART, (EDWARD J. BRUNDAGE, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellants are the owners of or interested in property against which a special assessment for local improvements has been confirmed by the judgment of the circuit court of Cook county. To reverse that judgment this appeal is prosecuted.

The property in controversy is situated on South Park avenue between Fifty-fifth and Fifty-sixth streets. South Park avenue originally was sixty-six feet wide except between those two streets, where it was only twenty-nine feet wide. It was proposed by the city to widen South Park avenue between the streets mentioned, by the condemnation of thirty-seven feet off the east side of the property of the appellants and others abutting on said South Park avenue, and an ordinance providing for the condemnation of the property was passed by the city council on the 24th of July, 1893. The proceeding was under section 53 of article 9 of the Cities and Villages act of 1872, as amended and then in force. Said section, in part, was as follows:

"Sec. 53. Whenever any city or village shall apply to any court for the purpose of making just compensation for property taken or damaged by such proceedings as are authorized by this act, such city or village may file in the same proceedings a supplemental petition, praying the court to cause that an assessment be made for the purpose of raising the amount necessary to pay the compensation and damages which may be or shall have been awarded for the

property taken or damaged, with the costs of the proceeding. The said court shall have power, at any time after such supplemental petition shall have been filed, to appoint three commissioners to make such assessment, and to ascertain, as near as may be, the costs incurred to the time of such appointment, and the probable further costs of the proceedings, including therein the estimated costs of making and collecting such assessment, and shall direct such costs to be included by such commissioners in making said assessment. Like proceedings in making said assessment shall be had, and the assessment shall be made, collected and enforced in the same manner, as near as may be, as is provided in this article in other cases.  *  *  * And every such cause shall be considered as pending in the court in which the same has been, or shall be commenced, until all the lands sought to be taken are paid for, or until the proceedings are dismissed where the lands have not been taken."

The ordinance provided that the cost of widening the street should be paid for by special assessment against the property benefited to the amount that it could be legally assessed for that purpose and that the remainder of the cost should be paid by general taxation. By consent of the owners of the property the appellee took possession of it and widened and paved the street before compensation was assessed for the property taken. Afterwards condemnation proceedings were instituted and the compensation of the property owners for land taken was assessed and judgment entered thereon. December 4, 1894, appellee filed a supplemental petition for the spreading of a special assessment to pay the amount of the awards made to the property owners. This petition was dismissed and another filed December 28, 1895. This was dismissed also, and a third supplemental petition was filed February 20, 1897. An assessment roll was filed July 14, 1897, assessing the property of appellants $9015. Objections were filed to the confirmation of the assessment. A jury trial was had and a verdict re-

turned finding the issues for the petitioner as to all the property except lots 1 to 8, inclusive, which is the property here involved but originally described as lots 15 and 16, block 2, Yerby's subdivision, etc. The lots were later subdivided into lots 1 to 8, inclusive, of Edgar M. Snow & Co.'s subdivision of lots 15 and 16, block 2, Yerby's subdivision, etc. By the verdict of the jury the assessment against these lots was reduced to $6770. A new trial was granted the owners of said lots 1 to 8, and a judgment of confirmation was rendered against all the other property for the amount assessed against it in the assessment roll. June 22, 1901, a hearing was had upon the objections of appellants before the court without a jury. The objections were sustained and the petition dismissed as to lots 1 to 8, inclusive. The judgment recites that "in the original condemnation proceedings in this case the benefits to the property in question hereinabove mentioned were, under the issues there presented, involved, considered and determined, and having been litigated in that case cannot again be the subject of litigation and the city is estopped by the former verdict and judgment, and the court, for the reasons aforesaid, finds the issues for the said objector." A writ of error was sued out of this court by appellee and the judgment of the circuit court was reversed. (*City of Chicago* v. *Mecartney,* 216 Ill. 377.) It was there held that the judgment in the condemnation proceeding was not conclusive against a subsequent proceeding to assess the property for benefits. No remanding order was filed in the lower court within two years, and no further steps were taken by appellee to assess appellants' property for the improvement until January 24, 1910, when the city council passed an ordinance for a new assessment. Said ordinance recited that the previous proceeding for the assessment of the property was annulled, and the corporation counsel was directed to have the said assessment set aside and a new assessment made and returned for the purpose of raising the amount necessary to

pay the compensation and damages which had been awarded for property taken for said improvement, together with the cost of said proceeding. The property against which the original assessment had been confirmed, except one parcel, was re-assessed the same amount that had been confirmed against it under the original assessment but it was entered in the assessment roll that the same had been paid. This, it was claimed, was necessary in order that the proportionate share of the assessment against the appellants' property would be made to appear. There was no judgment of confirmation on the new assessment against any property but the appellants'. Appellants' lots were assessed in the new assessment roll $7783.60. The total assessment, including that which had already been paid, amounted to $20,373.88. The assessment paid by all property owners other than appellants amounted to $10,158.74, leaving a balance required to pay the compensation awarded property owners for land taken, including costs and interest, of $10,215.14.

The principal argument of appellants is devoted to the first proposition in their brief, which is: "Where an assessment is confirmed, the court having jurisdiction, and the term has expired, there is no power, either in the court or the city council, to annul or set aside such assessment except for fraud or by consent of both parties." In support of this contention *McChesney* v. *City of Chicago,* 161 Ill. 110, *People* v. *McWethy,* 165 id. 222, *LeMoyne* v. *City of Chicago,* 175 id. 356, *Rich* v. *City of Chicago,* 187 id. 396, *Doremus* v. *City of Chicago,* 212 id. 513, and other cases are cited. In those cases it was decided that neither the city council nor the court in which the special assessment proceeding is had, has power to set aside a judgment of confirmation at a term subsequent to the term at which the judgment was rendered. In the case here under consideration the assessment roll was confirmed as to all the property assessed except the property of appellants. As to their property objections to the assessment were sustained and

judgment 'of confirmation denied on the grounds recited in the order above referred to. This court held this property was liable to assessment for benefits and reversed the judgment and remanded the case. The remanding order never having been filed in the court below there never was any judgment of confirmation against appellants' property prior to the judgment appealed from in this case.

If the authority of the city to assess appellants' property under the second supplemental petition depended upon section 48 of the act of 1872, which is substantially the same as section 60 of the present Local Improvement act, the assessment could not be sustained. That section applies only in cases where there has been a judgment of confirmation, and authorizes a new assessment against property within five years after confirmation of the original assessment, where, from any cause, the city fails to collect an assessment levied, which has not been canceled or set aside by order of any court. As this is not a supplemental assessment, section 47 of the act of 1872, which forms a part of section 59 of the present act, does not apply, for that section relates to supplemental assessments where the first assessment proves insufficient. Section 46 of the act of 1872, which is identical with section 57 of the present act, is as follows :

"Sec. 46. If any assessment shall be annulled by the city council or board of trustees, or set aside by any court, a new assessment may be made and returned, and like notice given and proceedings had, as herein required in relation to the first; and all parties in interest shall have like rights, and the city council or board of trustees, and the court, shall perform like duties and have like power in relation to any subsequent assessment as are hereby given in relation to the first assessment."

The assessment roll under the first supplemental petition, as we have said, was never at any time confirmed against appellants' property. The city, it is true, could, by

filing the remanding order of this court, have proceeded to assess the property benefits in that proceeding. By failing to file the remanding order, did it lose the right at any time thereafter to assess the property its proportionate share of benefits, if any accrued to it by reason of the improvement?

Appellee relies upon sections 46 and 53 as authorizing the assessment and the method pursued in causing it to be made and confirmed. It would seem clear that the case is not one for the application of the five years limitation prescribed by section 48. The failure of appellee to file the remanding order of this court in the court below was an abandonment of that particular suit or proceeding against the appellants' property but was not an abandonment of the right to levy an assessment against it for the purpose of paying the awards made in the condemnation suits. The judgments in the condemnation suits were never appealed from but remain in full force and effect, and the particular suit or proceeding for the first assessment was ancillary to the condemnation proceeding.. (*Philadelphia and Reading Coal and Iron Co.* v. *City of Chicago,* 158 Ill. 9.) No proceeding could be had against appellants' property under the first supplemental petition, and the assessment made thereunder, after the failure to file the remanding order of this court within the time required by statute, but the city was not without authority, under sections 46 and 53, to cause a new assessment of it to be made.

In *Philadelphia and Reading Coal and Iron Co.* v. *City of Chicago, supra,* an assessment was made in 1887 to pay the compensation awarded property owners in condemnation suits for opening and extending a street. The ordinance for opening the street and condemning the property was passed in March, 1886. The assessment roll returned under the supplemental petition to make an assessment to pay the awards in the condemnation suits was confirmed. Certain objectors appealed from the judgment of confirmation to this court, and the judgment was reversed on the

ground that the ordinance and plan of the proposed improvement provided for the extension of the street across the Chicago river but contained no provision for the construction of a bridge for crossing the river. (*Hutt* v. *City of Chicago*, 132 Ill. 352.) No remanding order was filed within two years. The city constructed a bridge which was paid for by general taxation, and after its completion the council annulled the old assessment and ordered a new assessment made to raise the amount awarded property owners in the previous condemnation suits. A supplemental petition was filed and a new assessment roll returned. The Philadelphia and Reading Coal and Iron Company and the Lehigh Valley Coal Company objected to the assessment against their property but their objections were overruled and the assessment roll confirmed, whereupon they appealed from the judgment of confirmation to this court. The property owned by the Philadelphia and Reading Coal and Iron Company had been assessed in the first proceeding $2500, which was paid by the then owners. Subsequently the Philadelphia and Reading Coal and Iron Company became the owner of it. The Lehigh Valley Coal Company was one of the appellants in *Hutt* v. *City of Chicago, supra,* and it had paid nothing under the old assessment. That company raised the question that by reason of the reversal of the judgment of confirmation in 1889 and the failure to file the remanding order the city was barred from making a new or other assessment without starting anew by adopting new ordinances authorizing condemnation of property and the payment for it by special assessment. This contention was not sustained and the judgment confirming the assessment roll against that company's property was affirmed. Under the old assessment roll the property of the Philadelphia and Reading Coal and Iron Company was assessed $2500. Under the new roll it was assessed $3150, and that company raised the question that the previous assessment having been paid by the then owners of the land, it was a

bar to a new assessment and the land discharged from any further burden unless proper steps were taken to collect a deficiency. The assessment was sustained, the court holding that the $2500 paid under the former assessment should be credited on the new assessment roll, and the company was required to pay the difference, $650. The court held section 46 authorized making the assessment.

In the *Hutt case* the ordinance was held invalid, and this was, in effect, a setting aside of the assessment and rendered the judgment of confirmation void, (*Murray* v. *City of Chicago,* 175 Ill. 340,) and all the property previously assessed was again assessed in the new assessment roll, and this was sustained by this court. In *City of Chicago* v. *Mecartney, supra,* the assessment was not held invalid, and the judgment of confirmation as to all property against which the assessment roll was confirmed and from which no appeal was prosecuted was a valid and binding judgment, not subject to be set aside at a subsequent term of the court. If appellants' property was benefited by the improvement we think the city was authorized to assess it its proportionate share according to the benefits it had received. The city could not in 1910 annul or set aside the former assessment in so far as it had been confirmed, but in our opinion it could assess the property as to which there had been no confirmation of the previous assessment.

It is contended that the ordinance of January 24, 1910, annulling the former assessment proceeding and directing a new assessment made, was not in force when the supplemental petition was filed, for the reason that the ordinance at that time had not been signed by the mayor and only one day had elapsed after the passage of the ordinance by the city council before the petition was filed. Whether the point is well taken or not, the validity of this assessment, it would seem, was not dependent on the validity of the ordinance. The judgment of the circuit court refusing confirmation of the former assessment against appellants' prop-

249—17

erty and dismissing the petition as to their property was an annulment of the assessment as to that property by the order and judgment of the court. By the failure to file the remanding order of this court within two years the city abandoned that particular suit but not the cause of action, (*Koon* v. *Nichols,* 85 Ill. 155; *Philadelphia and Reading Coal and Iron Co.* v. *City of Chicago, supra;*) and that proceeding was thereby discontinued, the effect of which was to leave the assessment under that proceeding annulled and set aside, and no further steps could be taken against appellants' property under the first supplemental petition. The amount to be paid by the special assessment was fixed and determined by the judgments in the condemnation suits, and no ordinance describing the improvement or estimate of its cost by commissioners was necessary to authorize the assessment under the second supplemental petition.

The ordinance under which the condemnation proceedings were had provided that the cost of widening the street should be paid for by special assessment on the property benefited, and section 53 authorized the city to file a supplemental petition for an assessment for the purpose of raising the amount necessary to pay the damages awarded for property taken or damaged. *Pearson* v. *City of Chicago,* 162 Ill. 383, involved the validity of the same assessment under a second supplemental petition that was before this court in *Philadelphia and Reading Coal and Iron Co.* v. *City of Chicago, supra,* and one objection made to the validity of the assessment there was, that the supplemental petition did not recite the ordinance authorizing the improvement and the report of the commissioners of its cost, as required by section 22 of article 9 of the Cities and Villages act of 1872. The court said: "This proceeding was not under that section but under section 53 of said article 9, which contains no such requirement, and what was said in that case [*Guild* v. *City of Chicago,* 82 Ill. 472,] concerning the other section is of no importance in this. Under

section 53 the supplemental petition is based upon the condemnation judgment, and there is no estimate of the commissioners as to the cost of the improvement previous to the filing of the petition." While that was not the precise question here involved, we see no more reason for requiring the passage of an ordinance by the city annulling an assessment that was already annulled before filing the supplemental petition, than there is for requiring the petition in a proceeding under section 53 to recite an ordinance authorizing the improvement. Under the ordinance providing for the condemnation of the property and payment therefor by special assessment and the condemnation proceedings had thereunder, no other ordinance was required to be passed before the supplemental petition for the assessment could be filed. At the time the last supplemental petition was filed the assessment as to all property except that of the appellants could not be annulled or set aside by ordinance, and as to appellants' property the assessment made under the former petition had already been annulled. In our opinion, therefore, an annulling ordinance was not required.

. It is also contended that it appears on the face of the roll that the assessment is unjust and should have been re-cast or modified by the court. An examination of the grounds upon which this assignment of error is based convinces us that, under the rule announced in *Allen* v. *City of Chicago*, 176 Ill. 113, and *Betts* v. *City of Naperville*, 214 id. 380, we would not be justified in reversing the judgment on that ground.

Other alleged errors of minor importance are urged, but we find no error in the record requiring a reversal of the judgment of the circuit court, and the judgment is affirmed.                                  *Judgment affirmed.*